UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81180-CIV-MARRA/MATTHEWMAN

UNITEDHEALTHCARE OF FLORIDA, INC.
and ALL SAVERS INSURANCE COMPANY,

Plaintiffs,

vs.

AMERICAN RENAL ASSOCIATES HOLDINGS,
INC., et al.,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant American Renal Associates Holdings, Inc.'s Motion to Dismiss (DE 40).  The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I.  Background

Plaintiffs UnitedHealthcare of Florida ("UHC") and All Savers Insurance Company ("ASI") (collectively, "Plaintiffs") have brought this nine-count Second Amended Complaint (SAC, DE 161) against Defendants American Renal Associates Holdings, Inc. ("ARAH"), American Renal Associates, LLC ("ARA") and American Renal Management LLC ("ARM") (collectively, "Defendants").   Plaintiffs assert claims for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute 501.201 et seq. against all Defendants (count one); fraud against ARA and ARM (count two); negligent misrepresentation and omission against ARA and ARM (count three); unjust enrichment against ARA, ARAH and ARM (count four); tortious interference with contract against ARA and ARM (count five); aiding and abetting

fraud against ARAH (count six); civil conspiracy against ARA, ARAH and ARM (count seven); vicarious liability against ARA and ARAH (count eight) and request for declaratory relief against ARA, ARAH and ARM (count nine).

Defendant ARAH moves to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  In support, ARAH has submitted the affidavit of its chief financial officer, Jonathan Wilcox, to controvert the personal jurisdiction allegations made in the SAC.  Based on this evidence, ARAH asserts that it has no contacts in Florida that permit the exercise of personal jurisdiction under the Florida long-arm statute.  Furthermore, ARAH states that its relationship with ARA does not support personal jurisdiction over ARAH.

Plaintiffs respond that the Wilcox affidavit is "riddled with misstatements" and fails to rebut Plaintiffs' prima facie case of jurisdiction.  Plaintiffs assert that ARA operates as ARAH's agent, which attributes ARA's contacts with Florida to ARAH.  Furthermore, Plaintiffs claim ARAH operates and carries on a business in Florida and has committed tortious acts in Florida.

A.  Underlying factual allegations

According to the SAC, Plaintiff UHC insures and administers health insurance plans offered in Florida and Plaintiff ASI insures and administers a health insurance plan offered in Ohio. (SAC ¶¶ 34-35.)  ARAH is a national provider of kidney dialysis services for patients suffering from chronic kidney failure. (SAC ¶ 36.)  ARA is owned by ARAH and operates free standing dialysis clinics throughout the country. (SAC ¶ 37.) ARM also operates and manages free-standing dialysis clinics throughout the country. (SAC ¶ 38.)

Defendants allegedly have developed a scheme to obtain benefit payments from Plaintiffs for dialysis services rendered to patients with chronic kidney disease. (SAC ¶ 1.)  In an effort to

increase revenues and profits before a scheduled initial public offering of ARAH's stock, ARA and ARM personnel convinced patients in Florida and Ohio to abandon Medicaid or Medicare coverage and enroll in commercial plans offered by Plaintiffs through the health insurance exchanges established under the Patient Protection and Affordable Care Act ("ACA"). (SAC ¶¶ 3-4.)

Medicaid and Medicare pay ARA a reimbursement rate of $300 or less for one session of dialysis services.  In contrast, ARA can bill Plaintiffs at rates that are as much as twenty times the rates it would receive from either Medicaid or Medicare. (SAC ¶ 6.)  ARA allegedly steered patients away from the government insurance plans which reimburse at a lower rate, into Plaintiffs' commercial plans which reimburse at a higher rate.  The charges for the dialysis services performed were then submitted to Plaintiffs, since the patients were now Plaintiffs' insureds, rather than to Medicare or Medicaid, to whom the charges would have been submitted but for Defendants' alleged wrongful conduct. The charges were frequently more than $4,000.00 per treatment for dialysis services. (SAC ¶ 7.)  This caused Plaintiffs to make substantial payments it would not have otherwise made if the charges for services rendered to these insureds had continued to be submitted to Medicare or Medicaid.  This allegedly resulted in Plaintiffs paying millions in benefits to ARA. (SAC ¶¶ 5, 16.)

B.  Personal jurisdiction allegations in SAC regarding ARAH

The SAC alleges that ARAH owns and operates dialysis centers in this district and regularly transacts business in this district, has an office or agency in Florida, has committed a tortious act in Florida and has engaged in substantial activity in Florida. (SAC ¶ 41.)   ARAH, ARA and ARM share the same managers and executives, share the same physical space and have

the same website and telephone number. (SAC ¶¶ 45-52.) ARAH has represented to the Securities and Exchange Commission ("SEC") that it owns and operates dialysis centers in Florida and that ARA and ARAH are the same company. (SAC ¶¶ 54-55, 58-63, 67,69, 71-75, 86-88.) ARAH has also made other public statements indicating that the business of ARA and ARAH is one company. (SAC ¶¶ 57, 65,76-78.) ARA and ARM exist predominately to serve the financial goals of ARAH. (SAC ¶ 79.)

    C.  ARAH's jurisdictional evidence

ARAH is a publically traded company with its principal place of business in Beverly, Massachusetts. (Wilcox Aff. 2, DE 40-1.) ARAH is a holding company for publically traded stock. (Id. at ¶ 4.) ARAH does not conduct any business in Florida. (Id. at ¶ 5.) It does not have an office, mailing address, telephone listing or bank account in Florida. (Id. at ¶ 6.) ARAH does not have any employees in Florida nor does it own property in Florida. (Id. at ¶¶ 7-8.) ARAH has no clients in Florida, earns no revenue in Florida and does not file tax returns in Florida. (Id. at ¶ 9.)

ARAH does not own, operate, manage or oversee any dialysis centers in Florida nor does it provide any medical services in Florida. (Id. at ¶ 10.) The dialysis centers where the patients at issue received treatment are separate limited liability companies that are not wholly owned by ARAH or ARA. (Id. at ¶ 29.) Each dialysis center maintains its own post office box and bank account. (Id. at ¶ 30.) ARAH does not access those PO Boxes and all payments sent to those PO Boxes are deposited into each clinic's individual banking accounts. (Id. at ¶ 31.)

ARAH has not submitted any insurance claims to UHC and it has not received any form of payment, reimbursement or remuneration from UHC. (Id. at ¶¶ 14, 17.) Likewise, ARAH

did not supervise, direct, review, manage or oversee the submission of any insurance claims to United by ARA or any other ARA-affiliated entity. (Id. at ¶¶ 15-16.) In addition, ARAH has not placed any calls or sent any communications to UHC in Florida. (Id. at ¶ 18.)

ARAH has not made any donations or financial contributions to AKF. (Id. at ¶ 23.) ARAH does not treat any dialysis patients nor does it communicate with any dialysis patients. (Id. at ¶ 12.) ARAH has not referred any patient to AKF nor has it assisted or instructed any patient to apply for any services offered by AKF. (Id. at ¶ 24.) ARAH has not submitted any health insurance applications to UHC in Florida. (Id. at ¶ 19.)

ARA is a wholly-owned indirect subsidiary of ARAH. (Id. at ¶ 3.) ARAH is not engaged in a joint venture with ARA. (Id. at 28.) ARAH and ARA file separate tax returns. (Id. at ¶ 41.) ARAH did not manage, supervise, or direct the operations of any dialysis centers in Florida or oversee, supervise or direct any of the day-to-day operations of ARA and did not hire, fire, pay or control ARA's employees. (Id. at ¶¶ 11, 25, 34.) ARAH does not negotiate or approve any contracts entered into by ARA and does not provide ARA with any accounting, billing or payroll services. (Id. at ¶¶ 32-35.) ARA does not seek ARAH's approval or permission before making expenditures. (Id. at ¶ 36.) ARAH does not purchase goods or supplies for ARA or solicit customers for ARA. (Id. at ¶¶ 37-38.) ARAH does not hold out ARA as its agent nor is ARA authorized, or held out as authorized, to conduct business or enter into contracts on ARAH's behalf. (Id. at ¶ 33.)

ARAH did not direct ARA personnel to enroll patients in private commercial health insurance plans. (Id. at ¶ 20.) ARAH did not direct ARA's operations, did not direct any ARA-affiliated entities on how to best treat their patients, and did not direct or instruct those entities on

whether, or how, to educate patients about their insurance options. (Id. at ¶ ¶ 20-22, 26.)

As a publicly traded company, ARAH is required to file certain documents with the SEC and to hold earnings calls for its investors. (Id. at ¶ 42.) The "investor section" on the ARAH website are intended to conform with the SEC's requirement that publically traded companies use plain English for the benefit of investors. (Id. at ¶ 43.) ARAH's SEC fillings are done on a consolidated basis for all of its holdings. (Id. at ¶ 42.)

D.  Plaintiffs' Rebuttal Evidence

Syed Kamal, cofounder and president of ARAH and ARA, has lived in Florida since ARA was formed and works out of ARA's Tampa, Florida office . (Ex. L at 24, 31, 101-02, Gleason Decl, DE 139-1.) It is likely that Kamal handled matters in his ARAH capacity while in Florida. (Id. at 102-04.) Joseph Carlucci is CEO of ARAH, ARM and ARA. (Id. at 30-31.) ARAH officers have attended meetings in Florida in March of 2015 and 2016. (Id. at 106-08.)

ARAH has filed information with the SEC stating that they operate 39 clinics in Florida and have earned more than $657.5 million in revenue in 2015 from all clinics overall. (Ex. C at 38, Gleason Decl. ) Earnings by the clinics get distributed to ARA which get reported on ARAH's consolidated financial statements. (Ex. L at 64-65, 69.)

Wilcox testified that ARAH is a public company and as CFO, he reviews SEC filings, shareholder reporting, and monitors financial performance of the underlying investments of ARAH. He also monitors the day-to-day activities of ARM. (Ex. L. at 19.) The ARAH board monitored and reviewed legal matters of ARM and ARA, clinical outcomes for patients at the clinic levels, and which insurance companies are paying for dialysis services. (Ex. L at 98-99.) ARAH also monitored the charitable contributions of ARA. (Ex. L at 215-16.)

The employees at the dialysis clinics are employees of ARM. (Ex. L at 57.)  The clinics are managed by committee, which includes both ARAH's CEO and President.  The committee serves to ensure that ARM and ARA are providing adequate services. (Ex. L at 164-65; Statement of Ownership, Ex. N, O, P.)

II. Personal Jurisdiction

A.  Legal Standard

The plaintiff's burden in alleging personal jurisdiction requires that the plaintiff establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  If by defendant's affidavits or other competent evidence, defendant sustains the burden of challenging plaintiff's allegations, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents. However, where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff.  See Future Tech. Today, Inc., v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Robinson v. Giarmarco & Bill, P.C., , 74 F.3d 253, 255 (11th Cir. 1996) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)); Exhibit Icons, LLC v.  XP Cos., LLC, 609 F. Supp. 2d 1282, 1291-92 (S.D. Fla. 2009).

A defending party may move to dismiss a claim for relief under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To determine whether a nonresident defendant is subject to personal jurisdiction, two requirements must be met: 1) the Florida long-arm statute must be satisfied; and 2) the exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Posner, et al. v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir.1999); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). Thus, if Florida's long-arm statute is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due

process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000) (per curiam) (citing Sculptchair, 94 F.3d at 626); see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Florida's long-arm statute provides for both specific and general personal jurisdiction. Fla. Stat. § 48.193(1)-(2). Specific personal jurisdiction refers to the Court's jurisdiction over a nonresident defendant if the asserted cause of action "arises from" that defendant's actions within the forum. Fla. Stat. § 48.193(1); Melgarejo v. Pycsa Panama, S.A., 537 F. App'x 852, 854 (11th Cir. 2013). General personal jurisdiction refers to the Court's jurisdiction over nonresident defendants who are "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, [and] whether or not the claim arises from that activity." Fla. Stat. § 48.193(2); Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000).

Florida law determines the application of the long-arm statute. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11 th Cir. 2013) (citing United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir.2009)). The Court is required to apply the statute as the Supreme Court of Florida would and "adhere to the interpretations of [the statute] offered by Florida's District Courts of Appeal absent some indication that the Florida Supreme Court would hold otherwise." Louis Vuitton Malletier, S.A., 736 F.3d at 1352 (citing Sculptchair, 94 F.3d at 627)).

B. Discussion

"The Eleventh Circuit has held that in deciding Rule 12(b) motions to dismiss, district courts should, as an initial matter, address any personal jurisdiction arguments raised by

defendants." Mother Doe I v. Al Maktoum, 632 F. Supp. 2d 1130, 1134 (S.D. Fla. 2007) (citing Madara v. Hall, 916 F.2d 1510, 1513–14 (11th Cir.1990)).

The Court begins its analysis by examining each potential basis for personal jurisdiction alleged under the long-arm statute. The first basis that will be examined is Florida Statute § 48.193(1)(a)(1); that is, "carrying on business" in Florida. To fall under this provision, AHAH, as a non-resident company, must have collective activities that show a "general course of business activity in the state for pecuniary benefit." Horizon Aggressive Growth L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005). Factors considered include: the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served and the percentage of overall revenue gleaned from Florida clients. Id.

Based on the affidavit of Wilcox, ARAH has rebutted the jurisdictional allegations of the Complaint. ARAH does not have an office in Florida, is not licensed to do business in Florida, does not have Florida clients and does not receive revenue from Florida. Nor does ARAH have employees in Florida, a telephone listing, office or mailing address or any property in Florida. Furthermore, as a stock holding company, ARAH does not treat patients or provide any dialysis services in Florida.

Plaintiffs attempt to controvert this evidence. Plaintiffs point to evidence that the president and director of ARAH lives and works in Tampa, Florida which "[p]resumably" means that all of his work is done in Florida. (Resp. at 20.) Plaintiffs also point out that ARAH has conducted meetings in Florida and gains financially from dialysis clinics in Florida.

The Court finds Plaintiffs' evidence unpersuasive. Putting aside the speculative nature of

Plaintiffs' arguments, the Court notes that the mere presence of Kamal, the president and director of ARAH, in Florida does not subject ARAH to personal jurisdiction in Florida. See Flake v. Schrader-Bridgeport Int'l, Inc., No. 3:07–0925, 2010 WL 1027128, at * 6 (M.D. Tenn. Mar. 18, 2010) ("A corporation is a distinct legal entity that exists separately from its shareholders, officers, and directors. In this age of electronic communications, telecommuting, and distributed management, the fact that [] officers and directors maintain offices in [a state] does not, by itself, lead to the conclusion that the corporation has continuous and systematic contact with [that state] or that the corporation is conducting business within the state"). Furthermore, with respect to the specific jurisdiction statute, Plaintiffs must show a connection between Kamal's presence in Florida and the specific cause of action alleged. See Insight Instruments, Inc. v. A.V.I.-Advanced Visual Instruments, Inc., 44 F. Supp. 2d 1269, 1271 (M.D. Fla. 1999) (the suit must be related to the activities alleged to have been conducted in-state).

Likewise, Plaintiffs have not shown a connection between the meetings that occurred in Florida and the claims in this case. Moreover, even if they did relate to the claims in this case, a handful of meetings in Florida,[1] does not confer jurisdiction under the "carrying on" business provision of the long-arm statute. See Bernardele v. Bonorino, 608 F. Supp. 2d 1313, 1322 (S.D. Fla. 2009) (collecting cases regarding limited number of meetings in the personal jurisdiction context).

Nor does the Court find Plaintiffs' reliance on ARAH's SEC filings persuasive. Indeed, numerous courts have held that statements on a company web site and SEC forms "were not meant to state the legal relationship between the parties but to state in terms investors might

---

[1] Nor have Plaintiffs established that these meetings were actually ARAH meetings.

understand the complicated arrangements between the parent, subsidiaries, and sub-subsidiaries." Development Corporation of Palm Beach v. WBC Construction, LLC, 925 So. 2d 1156, 1163 (Fla. Dist. Ct. App. 2006); see iSocial Media Inc. v. bwin.party 8 Digital Entm't PLC, No. 12-81278-CIV, 2013 WL 5588238, at *8-10 (S.D. Fla. Oct. 10, 2013); Yellow Pages Photos, Inc. v. Ziplocal, LP, No. 8:12 –cv–755–T–26TBM, 2012 WL 5830590, at * 5 (M.D. Fla. Nov. 16, 2012).

Next, the Court rejects the significance of Plaintiffs' evidence that, the clinics' profits that are distributed to ARA and find their way onto ARAH's financial statements, establish personal jurisdiction over ARAH in Florida.  Indeed, such a financial arrangement is part and parcel of the parent/subsidiary relationship and is inadequate to confer personal jurisdiction.  See Miller v. Toyota Motor Corp., No. 6:07-cv-1358-Orl-19DAB, 2008 WL 516725, at * 5 (M.D. Fla. Feb. 22, 2008) (Florida revenue that passed through subsidiaries is insufficient to establish personal jurisdiction); Extendicare, Inc. v. Estate of McGillien, 957 So. 2d 58, 64-65 (Fla. Dist. Ct. App. 2007) (collecting revenue from subsidiary is not enough to establish personal jurisdiction).  Even considering all this evidence collectively, the Court finds that personal jurisdiction cannot be established over ARAH under Florida long-arm statute § 48.193(1)(a)(1).[2]

The Court now turns to the application of the Florida long-arm statute § 48.193(1)(a)(2). Florida's long-arm statute authorizes an exercise of personal jurisdiction where a claim arises from a defendant "[c]ommitting a tortious act within this state." Id.  Plaintiffs contend that ARAH committed torts directed at Florida that caused injury in Florida. (Resp. at 23.)

---

[2] The same conclusion applies to general jurisdiction, Florida long-arm statute § 48.193(2), which is equally lacking.

To be sure, "a tortfeasor's physical presence in Florida is not required to obtain personal jurisdiction under this provision." Keim v. ADF MidAtlantic, LLC, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) (citing Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009); Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) (internal quotation marks omitted)).  Typically, when a plaintiff proceeds under this theory, personal jurisdiction is based on an out-of-state defendant's "telephonic, electronic, or written communications into Florida" are sufficient to trigger jurisdiction under the Long–Arm statute provided, however, that the cause of action arises from those communications.  See American Color Graphics, Inc. v. Brooks Pharmacy, Inc., No. 8:05-CV-1512-T-27TBM, 2007 WL 3202748, at * 4 (M.D. Fla. 2007) ("It is well-settled that a tortious act can occur in Florida 'through the nonresident defendant's telephonic, electronic, or written communications into Florida.' ") (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)); ABL–USA Enters., Inc. v. Hawk Aviation, Ltd., 15 F. Supp. 2d 1297, 1300 (S.D. Fla. 1998) (tortious interference accomplished by telephone calls into Florida).

Here, Plaintiffs rely on documents entitled "Statement of ownership" of the Belle Glade and Clewiston clinics. (Exs. O, P to DE 139-16.)  According to Plaintiffs, these documents show that Kamel and Carlucci are managers and officers of the Belle Glade and Clewiston clinics. (Exs. O, P to DE 139-16.)  While they are identified as managers and officers of the Belle Glade and Clewiston clinics, these documents do not identify in what capacity they served.  (Exs. O, P to DE 139-16.)  This is significant because Kamal is the president of both AHAH and ARA and Carlucci is the CEO of ARAH, ARA and ARM.  (Ex. L at 30-31.)  Indeed, Wilcox's deposition testimony explains that the role of ARM is to provide support for the day-to-day operations of the

clinic, and Kamel and Carlucci are on the management committees as a CEO and president of ARM.  (Ex. L at 165.)  Likewise, the email relied upon as evidence of "steering" patients does not identify ARAH in any way.  (Apr. 12 email string from Carlucci, DE 139-21.)  As such, none of this evidence (as well as the other evidence relied on by Plaintiffs) demonstrates that ARAH has taken actions directed towards Florida.

The Court now turns to Plaintiffs' argument that personal jurisdiction over ARAH exists based upon the contacts of ARA, its subsidiary, under an agency theory.  It is well-established that general agency principles apply when determining personal jurisdiction. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1272 (11th Cir. 2002); Taylor v. Phelan, 912 F.2d 429, 433 (10th Cir.1990) (per curiam). "[I]f the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." Meier, 288 F.3d at 1272.

The parties do not dispute that ARA is subject to personal jurisdiction in Florida.  Thus, if ARA operates as ARAH's agent, ARAH would be subject to the Court's jurisdiction.  Plaintiffs contend that ARA and ARAH are financially, structurally and managerially indistinguishable.  (Resp. at 12.)

With respect to the overlap between ARA and ARAH, the Court finds this evidence unpersuasive.  Even accepting the overlap of ARAH's board of directors and the officers of ARA and ARM, it does not destroy the legal identity of ARAH.  See Yellow Pages Photos, Inc. v. Ziplocal, LP, No. 8:12–cv–755–T–26TBM, 2012 WL 5830590, at *5 (finding no personal

jurisdiction over parent company even though there was "almost 100% sharing of directors and officers by the parent and subsidiary" because "[o]ne of the basic tenets of corporate law is that shared directors and officers of parents and subsidiaries may hold the same position in both and 'change hats' to represent the two corporations separately"); Faro Techs. Inc. v. Cimcore Corp., No. 6:05-CV-1702-ORL-31JGG, 2006 WL 1119223, at *5 ("It is not enough for the entities to share officers or directors, or for one entity to have the power to hire and fire the officers and directors of the other; for personal jurisdiction to attach, the parent corporation must exercise operational control of the day-to-day business of the subsidiary."); Miller v. Toyota Motor Corp., No. 607CV-1358ORL-19DAB, 2008 WL 516725, at *5 (M.D. Fla. Feb. 22, 2008) ("[R]epresentatives of a parent corporation often directly participate in the management of the subsidiary. The mere intermingling of officers and directors does not imply that one corporation acts as a puppet of the other."); In re Farmland Indus., Inc. v. Potash Corp., No. 3:05-cv-587-J-32MCR, 2007 WL 1018367, at * 7 ("What is required for jurisdiction based on agency is not some control but "operational control" by the parent over the subsidiary.").

The same can be said of the sharing of a website, address or telephone number and the use of the same generic trademarks. See MeterLogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000) ("the sharing of a business address and the overlap of officers is insufficient to support a finding that the subsidiaries are the alter ego of their corporate parents."); Lee-Bolton v. Koppers Inc., No. 1:10CV253/MCR/GRJ, 2013 WL 11522040, at *6 (N.D. Fla. Sept. 9, 2013) (holding company was not subject to personal jurisdiction based on agency relationship with subsidiary even though the companies shared offices, phones, a website, and common email addresses); see also MeterLogic, 126 F. Supp. 2d at 1355 n.7 (rejecting

argument that use of letterhead established agency relationship justifying the exercise of personal jurisdiction over parent corporation); In re Farmland, 2007 WL 1018367, at *6-7 (shared use of "standard form corporate letterhead" was insufficient to establish agency relationship for personal jurisdiction purposes).[3]

Nor does the existence of a consolidated financial statement mean that ARAH manages the day-to-day operations of ARA.  See Khatib v. Alliance Bankshares Corp., 846 F. Supp. 2d 18, 32 (D.D.C. 2012) ("it is widely acknowledged that consolidating the activities of a subsidiary into the parent's reports is a common business practice, and courts routinely find that such collective descriptions are insufficient to impute the contacts of a subsidiary to its corporate parent) (internal quotation marks and citations omitted).

Most of the remaining arguments by Plaintiffs simply would require the Court to ignore all corporate structure.  Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F. Supp. 2d 1246, 1268-69 (S.D. Fla. 2001) (there is nothing inherently improper about corporations creating subsidiaries to perform specific functions. This is what holding companies do"); see also Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011) (A corporation is a legal entity—a fictional person . . . . The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations. Finding this arrangement useful to commerce, the Florida courts will not easily disregard this fiction); Reynolds Am., Inc. v. Gero, 56 So. 3d 117, 120 (Fla. Dist. Ct. App. 2011) ("it is, of course, well settled that "[a]

---

[3] The Court also applies its discussion regarding SEC filings and public statements supra and rejects Plaintiffs' argument that, under an agency theory of personal jurisdiction, these public statements should be taken to mean ARAH views its business as a consolidated whole with ARA and ARM.

parent corporation and its wholly-owned subsidiary are separate and distinct legal entities.").

Because Plaintiffs have not established that ARAH is subject to personal jurisdiction over Florida's long-arm statute, it is not necessary to reach the due process inquiry.  See United Tech. Corp. v. Mazer, 556 F.3d 1260, 1265 n.15 (11th Cir. 2009); Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 588-89 (M.D. Fla. 1991).  Given the Court cannot assert personal jurisdiction over ARAH, it is also unnecessary to address the argument for dismissal on the failure to state a claim.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant ARAH's Motion to Dismiss (DE 40) is **GRANTED IN PART WITH RESPECT TO THE RULE 12(b)(2) MOTION and DENIED WITHOUT PREJUDICE, TO RAISE IN THE APPROPRIATE FORUM, WITH RESPECT TO 12(b)(6) MOTION.**

Defendant ARAH is **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of May, 2017.

_____
KENNETH A. MARRA
United States District Judge