**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:16–cv-81180–KAM**

UNITEDHEALTHCARE OF FLORIDA, INC.
and ALL SAVERS INSURANCE COMPANY,

    Plaintiffs,

v.                                                                                          JURY TRIAL DEMANDED

AMERICAN RENAL ASSOCIATES, LLC and
AMERICAN RENAL MANAGEMENT LLC,

    Defendants.

_____/

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO ANSWER REQUESTS FOR
ADMISSION AND TO DEEM REQUESTS ADMITTED**

*FILED UNDER SEAL – REDACTED VERSION FILED PUBLICLY*

On July 13, 2017, United served ARA with requests for admission ("RFAs") designed to establish key facts, many of which the record shows are true. After asking for multiple extensions, ARA served responses on September 18, 2017 that did not admit or deny many RFAs posed and were filled with evasive language designed to obscure rather than clarify the record. ARA rephrased RFAs it did not like and "denied" the rephrased versions, refused to admit facts that are true, and avoided answering other RFAs by claiming to not understand basic words. Though the parties have conferred, ARA has not yet served any amended responses that address the deficiencies raised herein. United respectfully requests that the Court deem certain RFAs admitted, order ARA to serve amended answers to others, and award United expenses it has incurred in making proof of any facts deemed admitted, pursuant to Fed. R. Civ. P. 37(c)(2).

## LEGAL STANDARD

The purpose of RFAs is "to reduce the cost of litigation by narrowing the scope of disputed issues, facilitating the succinct presentation of cases to the trier of fact, and eliminating the necessity of proving undisputed facts." *Cutino v. Untch*, 303 F.R.D. 413, 414 (S.D. Fla. 2014). In responding to RFAs, parties should answer the requests posed, since "[a]dmitting what was not requested in an effort to dodge the request creates confusion and frustration … and leads to needless Court intervention." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 2008 U.S. Dist. LEXIS 54573, at *6-8 (N.D. Ohio June 4, 2008). Admissions or denials "must be forthright, specific, and unqualified." *Id.* "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). The requesting party may move to determine the sufficiency of an answer, and if the Court finds that the answer does not comply with the Rules, it may order that the matter is admitted or that an amended answer be served. Fed. R. Civ. P. 36(a)(6).

## ARGUMENT

I. **ARA refuses to admit facts the record shows are true and deploys inappropriate, evasive tactics to avoid answering RFAs it would rather not have to admit.**

To avoid admitting facts that are central to this case, ARA has served evasive and deficient responses to the RFAs United has posed (Ex. 1), including to the following RFAs:

*RFAs 1, 2, and 3:* These RFAs ask ARA to admit it "did not collect" any co-pays, coinsurance, or deductibles from the ACA Members at Issue while they were enrolled in the United Plans. United has alleged as much (DE 161 ¶¶ 156–61) and, to date, has not seen any evidence that ARA collected any amount from any Member at Issue. ARA's witnesses have not

been able to identify any Member from whom any amount was collected. █████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████ (Ex. 2 at
32:2-19.) Instead of admitting these RFAs, ARA "admits" it did not collect payments from the members "where it was prohibited from doing so by applicable law or where specific circumstances otherwise dictated that no [amount] could or should be collected," and otherwise "denies the request." (Ex. 3 at 3-4.) This "answer," which combines an ambiguous "admission" of something not requested with an "otherwise" vague denial is confusing and inadequate. If ARA did not collect from the Members at Issue, it must admit RFAs 1, 2, and 3.

**RFAs 5 and 6**: These RFAs ask ARA to admit that all Relevant Claims for the ACA Members at Issue were "prepared for submission" and "submitted" to United by employees of American Renal Management ("ARM"). The record shows these facts are true; indeed, ARA's former COO testified that: ██████████████████████████████████████████████
█████ (Ex. 4 at 309:20-21.) Nevertheless, ARA has refused to admit the RFAs, opining about how "as a general matter" claims were "entered" and "submitted" by ARM employees but then confusingly stating it "otherwise denies" the RFAs. (Ex. 3 at 5.) This effort to avoid admitting true facts undermines Rule 36 and imposes unnecessary costs on United and this Court. As ███████████████████████████████████████, they should be deemed admitted here.

**RFA 10:**  This RFA asks ARA to admit that at the time the Relevant Claims were submitted, it "knew each of the ACA Members at Issue was having his or her United Plan premiums funded by HIPP." This fact is not controversial—ARA has already admitted all of the Members were having their premiums funded by HIPP (Ex. 5 at 7-9), ARA ████████████
███████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████, meaning ARA knew each Member was having their United Plan premiums funded by HIPP. (*See* Ex. 6 at 6, 33, 40, 43.) Nevertheless, ARA refuses to admit the RFA as posed, "admitting" only that "as a general matter" it would "typically" be aware if a patient was receiving HIPP. This vague, evasive, non-answer is unjustified and is inconsistent with the discovery record. RFA 10 should be deemed admitted.

**RFAs 18 and 19:** These RFAs ask ARA to admit that it "knew that **the United Plans stated** that all premiums were to be paid by the ACA Members at Issue or an Authorized Third Party without contribution or reimbursement by or on behalf of any other third party" (a) before

the Enrolled ACA Members at Issue enrolled in the United Plans (RFA 18) and (b) while the ACA Members at Issue were enrolled in the United Plans (RFA 19). ARA's knowledge of what the United Plans **stated** matters because ARA has allegedly contravened those Plans by routing HIPP money to pay the Enrolled ACA Members' premiums. Moreover, ARA's documents show that ARA ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (Ex. 7.) Not wanting to admit what **it knew** the **plans stated**, ARA evades by claiming "United accepted third-party premium assistance from the [AKF]" and "on that basis," it denied the RFAs. (Ex. 3 at 11.) This does not address **what ARA knew about what the plans stated**. ARA should admit RFA 19, and should at a minimum be ordered to answer the substance of the RFAs.

     **RFA 22:** This asks ARA to admit it knew that none of the ACA Members at Issue could independently afford their United Plan premiums. This should be easy for ARA to admit, since each Member was receiving HIPP money to pay their premiums, and an explicit eligibility requirement for HIPP is that, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉ (Ex. 8 at 7.) Because ARA knew the Members were receiving HIPP money for their United premiums (and prepared HIPP applications), it necessarily knew they could not afford those premiums. Yet, ARA refuses to admit RFA 22, claiming it cannot understand the words "independently afford" and cannot "bring its judgment to bear on the inherently subjective and personal decision of how 53 separate individuals should organize and prioritize their personal finances." (Ex. 3 at 13.) Because HIPP is **only** for patients who cannot afford their premiums, ARA's excuse for not answering rings hollow, and RFA 22 should be deemed admitted.

     **RFA 24 and 26:** These RFAs ask ARA to admit it told some Florida and Ohio ESRD patients that "if they enrolled in a Marketplace Plan, Medicaid would cover their new plan copays, coinsurance, deductibles, and out-of-pocket expenses" and that "the [AKF] might pay their Marketplace Plan premiums in their entirety." ARA has already produced letters it sent to Florida and Ohio ESRD patients wherein it stated that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Ex. 9 at 2; Ex. 10 at 2.) Despite this proof, ARA refuses to admit it made these statements to Florida and Ohio patients, contending that that the RFAs are ambiguous, burdensome, and irrelevant. In response to RFA 24, ARA vaguely states "ARA typically would inform its patients of the financial resources potentially available to them with

respect to their dialysis treatments, including the American Kidney Fund's HIPP program" before "otherwise" denying the RFA. And in response to RFA 26, ARA confusingly states "ARA is not aware of Medicaid providing payment for private insurance cost-sharing obligations." This commentary fails to answer the RFAs. Moreover, if ARA's current claim that Medicaid *does not* provide payment is true, it is even more problematic that ARA ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. As ARA's own documents show the RFAs are true, they should be deemed admitted, or ARA should be ordered to answer them.

**RFA 27:** This RFA asks ARA to admit it knew "other providers were charging and collecting copays, coinsurance, deductibles, and out-of-pocket expenses from ACA Members at Issue." ARA's documents show ARA knew as much. For example, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (*See, e.g.,* Ex. 11 at 8, 10; *see also* Ex. 2 at 165:23-166:18 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.) ARA evades RFA 27 by objecting to it as irrelevant and otherwise inappropriate, and then denying it subject to those objections. But RFA 27 is clear and relevant (ARA told patients they would not incur any out-of-pocket expenses), and ARA should forthrightly answer and admit it.

**RFA 31:** This RFA asks ARA to admit that Jennifer Cordeiro "instructed [ARA] employees on which United Plans ACA Members at Issue should be enrolled in." ARA claims it does not know what "instructed" means, interprets it to mean an instruction specific to each patient, and based on that self-serving interpretation, denies RFA 31. (Ex. 3 at 17.) ARA's feigned ignorance and effort to rephrase the RFA into something it would like to deny is inappropriate. It is especially inappropriate because ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (*See, e.g.,* Ex. 2 at 283:15-19 (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬) Boulay also testified ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (*Id.* at 280:4-16, 287:18-288:1). ARA must admit RFA 31 or it should be deemed admitted.



*RFAs 43 and 44*: These RFAs ask ARA to admit the ARAH Board was regularly informed of the amount ARM was contributing to AKF and regularly asked John McDonough how AKF contributions were determined and why the amounts changed. Testimony from ARA's 30(b)(6) witness shows ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (Ex. 12 at 176:20-177:4.) He also testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 177:11-13; 178: 8-9, 19-22.) Instead of admitting the RFAs, ARA re-defined "regularly" to mean "at least every other board meeting" and, on that basis, denied the requests. This attempt to evade admitting RFAs ▓▓▓▓▓▓▓▓▓▓▓▓ is inappropriate. ARA must admit the RFAs or they should be deemed admitted.

*RFAs 47 and 48*: These RFAs ask ARA to admit that after United started rejecting AKF check payments, "ARM employees worked with AKF employees to" "arrange for AKF checks to be sent directly to ARA clinics" (RFA 47) and "route AKF HIPP Program funds directly to ACA Members at Issue, so that [members] could use the fund[s] to pay their United Plan premiums." (RFA 48). The discovery record shows ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See,* e.g., Ex. 2 at 113:4-114:21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).) Not wanting to admit the RFAs, ARA claimed it could not understand the phrase "worked with," chose to interpret it in an absurd way—"to refer to an employment or other formal relationship"—and used that interpretation to deny the RFAs. This is exactly the type of evasive behavior courts have criticized. *See, e.g., Rodriguez v. Carey Int'l, Inc.*, No. 03-22442-CIV-UNGARO-BENAGES, 2004 U.S. Dist. LEXIS 32125, at *29-30 (S.D. Fla. Sep. 10, 2004) (party's effort to evade admitting RFAs by claiming to not understand basic term was "an egregious example of bad faith" and waste of resources, an example of "counsel's lack of candor," and a "flagrant disregard of the rules."). ARA knows United is not asking it to admit that its employees **had an employment relationship** with AKF employees. ARA should admit RFAs 47 and 48 as posed.

*RFA 50:* This RFA asks ARA to admit that "between October 1, 2014 and July 1, 2016, one of the goals of ARM's contributions to AKF was to increase your revenues." ARA claims it cannot understand the word "goals," chooses to interpret "goals" to mean "a formal corporate

- 5 -

decision identifying the aims of the patient education program," and on that basis, denies RFA 50. ARA's objections are baseless. The financial connection between AKF money and ARA's revenues are relevant and discussed throughout the SAC and in ARA's SEC filings.[1] ARA's evasive interpretation of the word "goals" shows ARA is determined to avoid admitting RFA 50, and does not make sense, because the RFA **asked about ARM's contributions to AKF, not ARA's so-called "education" program**.[2] ARA should be ordered to answer RFA 50 as written.

*RFAs 52, 53, 54, and 55:* These RFAs ask ARA to admit that between October 1, 2014 and July 1, 2016," "one of the goals" of ARA's "patient insurance education program" was: (a) "to switch ESRD patients' primary insurance from Medicaid to commercial coverage," (b) "increase [ARA's] commercial mix," (c) "convince Medicare-eligible ESRD patients to enroll in Marketplace Plans rather than Medicare," and (d) "increase the reimbursement rates [ARA was] receiving for ESRD patients." Rather than directly answering, ARA objects to the RFAs' relevance, claims to not understand the words "switch"[3] and "goals," and, based on those objections, denies the RFAs. But the financial motivations behind ARA's patient "education" program are at the heart of this lawsuit, and the idea that ARA cannot understand the words "switch" and "goals" belies common sense. Moreover, the evidence shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 13.)

ARA should be ordered to answer (and admit, where true) RFAs 52-55 in an unqualified way.[4]

---

[1] *See, e.g.,* ARA 2017 Q2 10-Q at 52-53 (stating restrictions on patients using AKF money to pay ACA premiums was going to cost ARA $25 million and potentially more in the future).
[2] The word "goal" means "the end toward which effort is directed." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 536 (11th Ed. 2012).
[3] *See, e.g.,* Ex. 14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)).
[4] United reserves rights to pursue RFAs 29, 111, and 112 if ARA does not supplement as agreed.

## CONCLUSION

Plaintiffs respectfully request the Court deem RFAs admitted (and award expenses for such proof) and order ARA to serve amended, responsive answers to RFAs where appropriate.

                              Respectfully submitted,

Dated: November 8, 2017         By: *s/Michael R.Whitt*
                                      Michael R. Whitt (Fla. Bar No. 0725020)
                                      mwhitt@robinskaplan.com
                                      Robins Kaplan LLP
                                      711 Fifth Avenue South, Suite 201
                                      Naples, FL 34102
                                      T: (239) 430–7070
                                      F: (239) 213–1970

                                      Martin R. Lueck (admitted *pro hac vice*)
                                      Thomas C. Mahlum (admitted *pro hac vice*)
                                      Anne M. Lockner (admitted *pro hac vice*)
                                      Jeffrey S. Gleason (admitted *pro hac vice*)
                                      Jamie R. Kurtz (admitted *pro hac vice*)
                                      William Bornstein (admitted *pro hac vice*)
                                      Robins Kaplan LLP
                                      2800 LaSalle Plaza
                                      800 LaSalle Avenue
                                      Minneapolis, MN 55402–2015
                                      T: (612) 349–8500
                                      F: (612) 339–4181
                                      mlueck@robinskaplan.com
                                      tmahlum@robinskaplan.com
                                      alockner@robinskaplan.com
                                      jgleason@robinskaplan.com
                                      jkurtz@robinskaplan.com
                                      wbornstein@robinskaplan.com

                                      *Attorneys for Plaintiffs UnitedHealthcare of Florida,*
                                      *Inc. and All Savers Insurance Company*

## STATEMENT OF COMPLIANCE WITH L.R. 7.l(a)(3)

Pursuant to Local Rule 7.1(a)(3), counsel for United certifies that counsel has conferred with the parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

## REQUEST FOR HEARING

Under Local Rule 7.1(b), Plaintiffs respectfully request a hearing on this motion take place so that additional argument may be heard and evidence presented. Plaintiffs estimate that the hearing on this motion will take thirty (30) minutes.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed under seal (with service via email to counsel listed below) and electronically on November 8, 2017 with the Clerk of Court using the CM/ECF system, thereby sending a notice of electronic filing to all counsel of record on the service list below.

*s/Michael R. Whitt*
Michael R. Whitt (Fla. Bar No. 0725020)

## SERVICE LIST

Matthew I. Menchel (Florida Bar No. 12043)
matthew.menchel@kobrekim.com
Andrew C. Lourie (Florida Bar No. 87772)
andrew.lourie@kobrekim.com
Adriana Riviere-Badell (Florida Bar No. 30572)
adriana.riviere-badell@kobrekim.com
Laura Maria Gonzalez-Marques
laura.gonzalez@kobrekim.com
Kobre & Kim LLP
2 South Biscayne Boulevard
35th Floor
Miami, FL 33131

Danielle S. Rosborough, admitted *pro hac vice*
danielle.rosborough@kobrekim.com
Kobre & Kim LLP
1919 M Street, NW
Washington, D.C. 20036

Clinton J. Dockery, admitted *pro hac vice*
clinton.dockery@kobrekim.com
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022

*Attorneys for Defendants American Renal Associates LLC
and American Renal Management LLC*